# EXHIBIT A

# CLAIM AGAINST THE COUNTY OF SAN DIEGO

(FOR DAMAGES TO PERSONS OR PERSONAL PROPERTY)

COUNTY COUNSEL
CLAIMS DIVISION
2025 MAY 19 AM 10:00
COUNTY OF SAN DIEGO
Time Stamp

**Received by** **via**
**U.S. Mail** ☐
**Inter-Office Mail** ☐
**Over the Counter** ☐

File No: 250102

A claim must be filed with the Claims Division of the County of San Diego within 6 months after which the incident or event occurred. Be sure your claim is against the County of San Diego, not another public entity. Where space is insufficient, please use additional paper and identify information by paragraph and number. Completed claims must be mailed or delivered to:

*County of San Diego, Claims Division, 1600 Pacific Highway, Room 355, San Diego, CA 92101- Phone (619) 531-4899*

## TO THE HONORABLE BOARD OF SUPERVISORS – THE COUNTY OF SAN DIEGO, CALIFORNIA

The undersigned respectfully submits the following claim and information relative to damage to persons and/or personal property:

### Claimant Information

| **Last Name** | **First Name** | **Middle Name** |
|---|---|---|
| Beck | David | James |
| **Street Address** | **City** | **Zip** |
| [redacted] | Vista | 92083 |
| **Home Phone (include area code)** | **Work Phone (include area code)** | **E-mail Address** |
| [redacted] | | [redacted] |

| **Birth Date** | **Driver's License Number** |
|---|---|
| [redacted]/1965 | [redacted] |

**Name, telephone and post office address to which claimant desires notices to be sent, if other than above:**
Joshua J. Nuni [SBN 313724], 250 E 1st St, Suite 1201, Los Angeles, CA 90012

### Claim Information

| **Date of Occurrence or Event from which the claim arises:** | **Time of Occurrence or Event from which the claim arises:** |
|---|---|
| 11/25/2024 | 2:15 p.m. |

**Location, including address (if none, nearest cross street) and city:**
Intersection of Primrose Ave. and Azalea Dr. in Vista, CA

**Specify the particular occurrence, event, act or omission you claim caused the injury or damage (use additional paper if necessary):**
See Exhibit A.

**State how or wherein the County of San Diego or its employees were at fault. Give the name(s) of the County department and employee(s) causing the damage or injury:**
See Exhibit A.

**CD1 (Rev. 6/11)** (Cont.)

**Give a description of the property damage or loss, as is known at the time of the claim:**

**Give a description of the injury, as is known at the time of the claim:**
Mr. Beck was thrown to the ground, resulting in a Rockwood Type 1 AC Joint Separation in his left shoulder and abrasions on his face, causing him pain and suffering, ongoing costs, and lost income.

**Social Security Number (required for Federal reporting requirements):**
[redacted]231

**Name and address of any other person injured:**

**Name and address of the owner of any damaged property:**

## Damages Claimed

**Amount claimed as of this date:** $ TBD

**Estimated amount of future costs:** $ TBD

**Total amount claimed:** $ TBD

**Basis for computation of amounts claimed (include copies of all bills, invoices, estimates, etc):**
Amounts of damages are to be determined (TBD) as they continue to accrue. They exceed $35k.

## Damaged Vehicle (if applicable)

| **Make:** | **Model:** | **Year:** |
|---|---|---|
| | | |

| **License Plate Number:** | **Mileage:** |
|---|---|
| | |
| **Insurance Company:** | **Policy Number:** |
| | |

## Additional Information

**Names and Address of witnesses, hospitals, doctors, etc:**

A. Sheriff's Deputy Thompson

B. Lakeisha Holley

C. TBD

**Any additional information that might be helpful in considering this claim:**
See Exhibit A.

> **WARNING: IT IS A CRIMINAL OFFENSE TO FILE A FALSE CLAIM (PENAL CODE § 72; INSURANCE CODE § 556.1)**

*I have read the matters and statements made in the above claim and I know the same to be true of my own knowledge, except as to those matters stated upon information or belief and as to such matters I believe the same to be true. I certify under penalty of perjury that the foregoing is TRUE and CORRECT.*

Signed this Tuesday day of May 13th, 20 25 at 6:40 AM

[signature]
Claimant's Signature

THE PEOPLE'S LAW PROJECT
LOS ANGELES
250 E 1st St, Suite 1201, Los Angeles, CA 90012 | (213) 293-9797 | peopleslaw.la

**EXHIBIT A**

On November 25, 2024, around 2:15 p.m., David Beck, a 59-year-old diabetic and self-employed pool technician, was driving home after a day of work servicing pools when he began to experience a hypoglycemic episode related to his diabetic condition. He was on the phone with his girlfriend, Lakeisha Holley, at the time, discussing Thanksgiving plans and groceries. Ms. Holley noticed that Mr. Beck was repeating himself, quickly realized something was wrong, and told Mr. Beck she believed his blood sugar was dropping.

Mr. Beck pulled over to the side of the road, disoriented and weak. Ms. Holley asked Mr. Beck where he was, telling him that she would come find him, but due to his disorientation, Mr. Beck could not tell her where he was. Ms. Holley then called 9-1-1 and reported that Mr. Beck was likely going into diabetic shock. Knowing his general work route, Ms. Holley then left immediately to try to find Mr. Beck.

Meanwhile, a San Diego County Sheriff's Office ("SDCSO") Deputy, later identified as Deputy Thompson, arrived on the scene. Deputy Thompson approached Mr. Beck's work truck and spoke with Mr. Beck and Ms. Holley, who was back on the truck's speaker phone system. Mr. Beck and Ms. Holley both informed Mr. Thompson right away that Mr. Beck was a diabetic, that he was experiencing a low blood sugar attack, and that he needed assistance. Ms. Holley also asked Deputy Thompson where they were, and Deputy Thompson informed her that they were at the intersection of Primrose and Azalea. Moments later, she heard a loud thump over the phone, and the call disconnected.

On information and belief, Deputy Thompson ordered Mr. Beck to get out of his truck. After briefly exiting the vehicle, Mr. Beck turned to return to the vehicle, at which point Deputy Thompson, on information and belief, began to physically detain him. Deputy Thompson then threw Mr. Beck to the ground and forcefully handcuffed him. In doing so, Deputy Thompson caused Mr. Beck to suffer a Rockwood Type 1 AC Joint Separation in his left shoulder and abrasions to his face.

On information and belief, Deputy Thompson then called for paramedics to respond to the scene. When the paramedics arrived, Mr. Beck's blood sugar was dangerously low, at 46 mg/dL. The paramedics were able to raise Mr. Beck's blood sugar levels with oral glucose. Ms. Holley then arrived at the scene with a chocolate chip cookie and fruit juice only to find Mr. Beck in handcuffs while receiving medical attention. Mr. Beck was eventually released into Ms. Holley's care. Deputy Thompson issued Mr. Beck a citation for Resisting Arrest, which the San Diego County District Attorney later declined to prosecute.

After Mr. Beck's handcuffs were removed, Deputy Thompson handed Mr. Beck his wallet. Mr. Beck's wallet had been in the cargo pocket of his pants before his encounter with Deputy Thompson. On information and belief, Deputy Thompson searched Mr. Beck while he was disoriented or unconscious and removed his wallet from his person.

The next morning, Mr. Beck went to the emergency room to seek treatment for his injuries, which have caused Mr. Beck pain, discomfort, anxiety, and fear in the months since the incident, and which have severely impacted his pool technician work in addition to his work as a professional drummer. Mr. Beck's damages continue to accrue, but already far exceed the jurisdictional limits of the Court.

Deputy Thompson acted pursuant to expressly adopted official policies or longstanding practices or customs of the County of San Diego (the "County") and SDCSO. These include policies and longstanding practices or customs on the use of force in situations including, but not limited to, encounters with individuals suffering from physical disabilities and medical conditions such as diabetes that can cause hypoglycemic episodes.

In addition, the County's training policies were not adequate to train its deputies to handle the usual and recurring situations with which they must deal, including, but not limited to, identifying and interacting with individuals experiencing hypoglycemic episodes and similar conditions.

The County and SDCSO knew that the failure to adequately train deputies to identify and interact with individuals experiencing diabetic hypoglycemic episodes and similar conditions made it highly predictable that SDCSO deputies would engage in conduct that would deprive persons such as Mr. Beck of their rights. The County and SDCSO were thus deliberately indifferent to the obvious consequences of the failure to train deputies adequately. This lack of training led to Mr. Beck's injuries at the hands of Deputy Thompson.

In fact, the County and SDCSO's official policies and/or longstanding practices or customs are so closely related to the deprivation of Mr. Beck's rights as to be the moving force that caused his injuries. In addition, the County and SDCSO are vicariously liable for the actions of Deputy Thompson and any other deputies or other County and SDCSO personnel involved in the incident.

Mr. Beck is and was, at all times relevant to his claims, a "qualified individual" as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2), and Rehabilitation Act because he suffers from diabetes, a physical impairment that substantially limits one or more major life activities. Deputy Thompson, the County, and the SDCSO were made aware of Mr. Beck's disability when Ms. Holley called 9-1-1, when Mr. Beck and Ms. Holley directly informed Deputy Thompson of Mr. Beck's condition, when Deputy Thompson found Mr. Beck in a state of disorientation consistent with a hypoglycemic episode, and also when Deputy Thompson, on information and belief, saw the glucose monitor on Mr. Beck's arm.

During his encounter with Mr. Beck, Deputy Thompson failed to reasonably accommodate Mr. Beck's disability, causing him to suffer greater injury in that process than other seized persons. Through the acts and omissions of the County and SDCSO and their agents and employees described herein, the County and SDCSO violated the ADA and the Rehabilitation Act by excluding Mr. Beck from participation in, by denying him the benefits of, and subjecting him to discrimination in the benefits and services it provides to the general public. Specifically, Deputy Thompson needlessly and recklessly escalated the situation with Mr. Beck by seeking to detain

him, throwing him to the ground, and handcuffing him, all without justification or any reasonable basis and without taking into account his diabetic condition. As a direct and proximate result of the aforementioned acts, including but not limited to Deputy Thompson, the County, and SDCSO's deliberate indifference to the violation of Mr. Beck's rights, Mr. Beck suffered and continues to suffer great pain and suffering, humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

The County and SDCSO and their agents and employees have failed and continue to fail to take into account and provide reasonable accommodations for persons with physical disabilities such as diabetes by failing to, among other things: adopt and enforce policies and procedures for communicating effectively, controlling, and safely interacting with persons with physical disabilities such as diabetes who may be experiencing a hypoglycemic episode; train and supervise County and SDCSO deputies and employees to communicate effectively, control, and safely interact with encounters persons with physical disabilities such as diabetes who may be experiencing a hypoglycemic episode; and train and supervise County and SDCSO deputies and employees regarding the cognition and behavior of persons with physical disabilities such as diabetes who may be experiencing a hypoglycemic episode.

Deputy Thompson intended to cause harmful or offensive contact with Mr. Beck, and threatened to touch Mr. Beck in a harmful or offensive manner. Mr. Beck reasonably believed that he was about to be touched in a harmful or offensive manner, and it reasonably appeared to Mr. Beck that Deputy Thompson was about to carry out his threats. Mr. Beck did not consent to Deputy Thompson conduct. Mr. Beck was harmed. Deputy Thompson's conduct was a substantial factor in causing Mr. Beck's harm.

Deputy Thompson intentionally touched Mr. Beck, or caused him to be touched. Deputy Thompson used unreasonable force. Deputy Thompson had reason to believe Mr. Beck was physically disabled and experiencing a hypoglycemic episode. Mr. Beck never harmed, attempted to harm, or threatened to harm anyone, and he presented no threat to another person. Mr. Beck did not consent to the use of that force. Mr. Beck was harmed. As a result of the conduct of Deputy Thompson and the County as described herein, Mr. Beck incurred and continues to incur damages. The use of unreasonable force by Deputy Thompson was once again a substantial factor in causing Mr. Beck's injuries.

Deputy Thompson, the County, and SDCSO's actions and omissions resulting in Mr. Beck's injuries were the result of their negligent failure to abide by the standard of care imposed upon law enforcement departments and deputies who regularly interact with individuals who are physically disabled and suffer from conditions such as diabetes that can cause hypoglycemic episodes. Instead of the numerous other options available to him, Deputy Thompson chose instead to use excessive force in contravention of established practices and established standards of care.

Deputy Thompson, the County, and SDCSO's actions and omissions in detaining and using force on Mr. Beck constituted threats, intimidation, and coercion, that interfered with his legal rights to be free of excessive force and wrongful arrest and to access government services despite his

medical condition, and Deputy Thompson, the County and SDCSO acted with reckless disregard for those rights.

Deputy Thompson searched Mr. Beck's property—namely, his wallet—which Deputy Thompson removed from Mr. Beck's pants while he was disoriented or unconscious. Deputy Thompson did not have a warrant to conduct this search and was acting within the performance of his official duties. Mr. Beck suffered an invasion of privacy and dignitary harm as a result of Deputy Thompson's unreasonable search of his property, in addition to emotional distress resulting from the invasion.

The County and SDCSO failed to appropriately hire, supervise, train, review, and ensure that its deputies abided by the standard of care. The County and SDCSO also failed to enact appropriate standards and procedures that would have prevented the injuries described herein to Mr. Beck, including failing to train deputies: (1) to identify and interact with individuals experiencing a hypoglycemic episode; (2) to utilize de-escalation techniques; and (3) not to use excessive force situations where such actions are not justified. As a result of these various failures, Mr. Beck was injured.